673 P.2d 1338

Juliette DOMINGUEZ, Deceased, By and Through Surviving Natural Mother and Personal Representative, Estrellita Dominguez, Plaintiff-Appellee,

and

Phillip Sosa,
Plaintiff/Intervenor-Appellant,

v.

Billy ROGERS, Gonzales Funeral Home, Inc., H.Y.C., Incorporated, d/b/a Aid Ambulance, Las Vegas Hospital, Inc., and Kenneth Osgood, M.D., Defendants-Appellees.

No. 5930.

Court of Appeals of New Mexico.

Nov. 15, 1983.

Certiorari Denied Dec. 19, 1983.

Leóf Strand, Albuquerque, Winston Roberts-Hohl, Santa Fe, for plaintiff/intervenor-appellant.

James Chakeres, Albuquerque, for plaintiff-appellee.

Carlos G. Martinez, Shaffer, Butt, Thornton & Baehr, P.C., Albuquerque, for defendant-appellee Las Vegas Hospital, Inc.

## OPINION

BIVINS, Judge.

Appellant, Phillip Sosa, appeals from the District Court's refusal to allow his intervention in this cause.

On September 11, 1981, plaintiff, Estrellita Dominguez, filed a claim against the named defendants for the wrongful death of her eight-year-old daughter, Juliette Dominguez, who was struck by a car while riding her bicycle. Plaintiff settled with some defendants for $25,000 and continued proceedings against other defendants. Appellant filed his motion to intervene on April 5, 1982, alleging in his amended motion that he is the natural father of Juliette Dominguez and that he has an interest in the pending action.

NMSA 1978, Civ.P.R. 24(a) (Repl.Pamp. 1980) provides for intervention of right:

(1) when a statute confers an unconditional right to intervene; or

(2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Appellant claims as his interest that he is the child's father and therefore entitled to benefits under New Mexico's wrongful death statute.

NMSA 1978, § 41–2–3 (Repl.Pamp.1982) provides:

Every such action as mentioned in Section 41–2–1 NMSA 1978 shall be brought by and in the name or names of the personal representative or representatives of such deceased person, and the jury in every such action may give such damages, compensatory and exemplary, as they shall deem fair and just, taking into consideration the pecuniary injury or injuries resulting from such death to the surviving party or parties entitled to the judgment, or any interest therein, recovered in such action, and also having regard to the mitigating or aggravating circumstances attending such wrongful act, neglect or default. The proceeds of any judgment obtained in any such action shall not be liable for any debt of the deceased: provided, he or she shall have left a husband, wife, child, father, mother, brother, sister or child or children of the deceased child, but shall be distributed as follows:

* * * if such deceased be a minor, childless and unmarried, then to the father and mother, who shall have an equal interest in the judgment, or if either of them be dead, then to the survivor. * *

Rule 24(a)(1)

■ We hold that the wrongful death statute does not confer on appellant an unconditional right to intervene within the meaning of Rule 24(a)(1). Thus, he must meet the requirements of Rule 24(a)(2) in order to intervene as of right.

Rule 24(a)(2)

Rule 24(a)(2) allows intervention of right if the applicant (1) claims an interest relating to the action and (2) shows his ability to protect the interest will be impaired or impeded as a practical matter, *unless* existing parties adequately represent his interest.

1. Interest

■ In order to claim an interest, appellant attempted to show a paternal relationship with the deceased child. He offered documentary evidence for the trial court to consider, and on appeal points to the following documents in the record: a newspaper article reporting the death of the child and identifying her "paternal grandparents" as "Mr. and Mrs. Estanislado Sosa"; a welfare URESA (Uniform Reciprocal Enforcement of Support Act) petition of the New Mexico Department of Human Services by which the department sought to recover "its expenditures made on behalf of dependent minor children"; the "Findings, Certificate and Order" of the New Mexico District Court; and a consent order signed by appellant on October 29, 1981, in which he agreed to reimburse the Department of Human Services by making monthly payments. We note that appellant has introduced no evidence to indicate that he acknowledged paternity of the child at any time before her death. The deceased child's birth certificate under "NAME OF FATHER" says, "Not-Stated," and her death certificate under "FATHER–NAME" says, "None". No other evidence relating to paternity appears in the record of this case. Evidence not preserved in the record will not be considered on appeal. *Adams v. Loffland Brothers Drilling Company,* 82 N.M. 72, 475 P.2d 466 (Ct.App.1970).

Following a hearing on appellant's motion to intervene, the trial court found, inter alia:

1. That movent [sic] has failed to establish a *prima facia* [sic] case as the natural father of the deceased child. * * *

■ We agree with appellant and hold that the record contains sufficient evidence to establish a prima facie showing that he had an "interest" as required by Rule 24. He has failed, however, to make a sufficient showing that his interest may be impeded or impaired by inadequate representation.

2. Adequacy of Representation

■ Section 41–2–3 designates "the personal representative" as the party in whose name an action for wrongful death shall be brought. The personal representative is the only one who may bring the action. *Kilkenny v. Kenney,* 68 N.M. 266, 361 P.2d 149 (1961). He or she becomes the statutory trustee for the discoverable and identifiable beneficiaries named in the statute. *Stang v. Hertz Corporation,* 81 N.M. 348, 467 P.2d 14 (1970).

■ Appellant has not sought to remove the child's mother as personal representative by claiming that she could not fulfill her responsibilities in that role or that she is otherwise unsuited. Instead he asks, in effect, to be joined with the mother as a fellow personal representative by pointing out that section 41–2–3 refers to "personal representative or representatives." The reference in the wrongful death statute to the possibility of multiple representatives does not automatically give potential intervenors the right to join in that capacity. Moreover, appellant never requested the trial court or the probate court to recognize him as a personal representative. Had he done so, he would likely have had to show more than a prima facie case of fatherhood in order to withstand a challenge to his appointment from the mother.

In arguing that his interest will be impaired or impeded, appellant has offered no proof that the child's mother would not adequately represent his interest. He says she has flatly denied the existence of his interest citing the following from the settlement hearing held on October 1, 1981.

THE COURT: All right. And then the distribution of the funds will be under

the wrongful death act. And is the father surviving as well?

MR. HORTON: The father is surviving, sir, but they had a welfare hearing a year ago and he denied paternity, and now the welfare is trying to get him to show paternity. And he, at the last hearing, was more or less excluded because he didn't admit to being the father of the child; is that correct, Mrs. Dominguez?

A: Yes.

Appellant argues that this interchange amounted to giving the court misinformation in derogation of his interest. We do not believe that these statements indicate Mrs. Dominguez would not fulfill her statutory responsibilities. Additionally, at the time of the settlement hearing Mrs. Dominguez could not have known that appellant admitted paternity, since he did not do so until October 29, 1981.

Some courts in other jurisdictions have allowed intervention in wrongful death actions similar to the one here. See, e.g., Nunez v. Nunez, 25 Ariz.App. 558, 545 P.2d 69 (1976). We distinguish the approach of other jurisdictions on the basis of their wrongful death statutes. While some states calculate the measure of damages for wrongful death on the basis of general injury to the statutory beneficiaries, New Mexico gives a jury the power to award "damages, compensatory and exemplary, as they shall deem fair and just" and limits consideration of the beneficiary's specific injury to "pecuniary injury". See § 41–2–3. Appellant has not claimed, and cannot claim, that he personally suffered any pecuniary injury as a result of the child's death.

Appellant further argues a possibility exists that the mother could be found comparatively negligent and that knowing this she might settle for a lesser amount and thereby fail to protect his best interest. A similar argument was made and rejected in Matter of Estate of White, 41 Or.App. 439, 599 P.2d 1147 (1979). Although New Mexico's wrongful death statute, unlike Oregon's, does not require court approval of

settlement, the settlement made was in fact approved by the court. As to whether or not a settlement must be approved, we express no opinion. See NMSA 1978, Section 45–3–1101–1102. We have already pointed out that appellant has not attempted to remove the personal representative. In any event nothing in the record before this Court indicates a factual basis for a finding of comparative negligence against the mother. The only reference to the mother's possible liability appears as an allegation in the answer of one of the defendants. In this opinion we need not address the effect of a beneficiary's partial liability on recovery under section 41–2–3 following Claymore v. City of Albuquerque, aff'd sub nom, Scott v. Rizzo, 96 N.M. 682, 634 P.2d 1234 (1981), and Bartlett v. New Mexico Welding Supply, Inc., 98 N.M. 152, 646 P.2d 579 (Ct.App.1982).

We note that appellant's interest, if any, is identical to that of the personal representative. She would certainly have every reason to recover as large an award as possible. See generally Annot., 5 A.L.R. Fed. 518, § 6(a) (1970) (effect of identity of interests on Rule 24(a)(2) intervention).

Section 41–2–3 clearly names a nominal party as the person who must bring the wrongful death action on behalf of all the individual statutory beneficiaries. We do not believe the legislature intended Rule 24(a) to operate as a device by which a party could thwart the representative form of action authorized in wrongful death suits. Otherwise there would be no reason why every statutory beneficiary could not intervene as a matter of right. Our holding fully accords with Hall v. Stiles, 57 N.M. 281, 258 P.2d 386 (1953).

Recognizing that courts ordinarily interpret Rule 24(a) liberally, we agree with the view expressed in Peterson v. United States, 41 F.R.D. 131 (D.Minn.1966): "'Liberality, however does not equate with rights of indiscriminate intervention.' The bounds of the Rule are to be observed."

## CONCLUSION

 Thus, we hold that appellant has failed to make a showing of inadequate representation which would warrant his intervention in the wrongful death action. We have considered his remaining arguments and find them to be without merit.

 Appellants' inability to intervene at this time does not, of course, preclude him from bringing a separate action for a declaratory judgment and other appropriate equitable relief or from bringing a separate suit against the personal representative as the statutory trustee to recover his claimed share of the judgment or settlement proceeds. It is also possible that appellant could recover additional damages if the personal representative fails to fulfill her statutory responsibility. *See State Ex Rel. Palmer v. District Ct., Etc.,* Mont. 619 P.2d 1201 (1980).

 The availability of various procedural avenues does not by any means guarantee appellant's recovery. If he pursues his claim and proves that he is in fact the natural father, the personal representative may present evidence of abandonment and non-support. Proof of natural-parent status is not necessarily sufficient for recovery under the wrongful death statute. *See* NMSA 1978, § 45–2–109 (defining when a natural father is recognized as an heir of a child). The personal representative might also seek to terminate appellant's parental rights, particularly in light of the fact that the only remaining one is a right to recover money. *Cf. Wasson v. Wasson,* 92 N.M. 162, 584 P.2d 713 (Ct.App.1978) (refusal to terminate parental rights upheld in part to protect children's right to recover wrongful death damages if the father died due to the negligence of a third person).

We do not overlook the irony of appellant's claim. Had appellant died instead of the child on June 1, 1981, the record indicates that the child could not have proven any acknowledgment of paternity and therefore probably could not have recovered for appellant's wrongful death. This Court has recognized that "[a]s a matter of public policy, in every proceeding in which minor children are involved, a court's primary obligation is to further the best interests of the child." *Wasson* at 163, 584 P.2d 713. This state has no similar public policy favoring a dependent child's alleged father who neither attempted to support her during her lifetime nor took steps to protect her interests in the event of his death. We agree with the philosophy of the Fifth Circuit which ruled against the claims of potential statutory beneficiaries who sought to advance their interests "in disregard of settled policies which uphold family-home against the perils of illegitimizing frequently innocent, nearly always defenseless minors at the hands of unrelated contestants for the spoils of a death claim." *Murphy v. Houma Well Service,* 413 F.2d 509 (5th Cir.1969). Similarly, this Court would take a narrow view of a self-interested individual who chooses to assert a parental status only when it becomes financially profitable to him following the death of a small child.

We affirm the trial court's denial of appellant's motion to intervene.

IT IS SO ORDERED.

WALTERS, C.J., and LOPEZ, J., concur.