**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: August 18, 2014

Docket No. 32,674

SHANNON SPOON, individually and as
Personal Representative of Daniel Spoon,
Deceased,

      Plaintiff-Appellee,

v.

ARTURO MATA and BURN
CONSTRUCTION COMPANY, INC.,

      Defendants,

and

KORINA FLORES, as Parent, Guardian
and Next Friend of minor Noah Spoon,

      Intervenor-Appellant.

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Jane Shuler Gray, District Judge**

Blenden Law Firm
Dick A. Blenden
Carlsbad, NM

Templeman & Crutchfield, P.C.
C. Barry Crutchfield
Lovington, NM

for Appellee

Martin, Dugan & Martin
Kenneth D. Dugan
Carlsbad, NM

1

for Appellant

Jarmie & Associates
Mark D. Standridge
Las Cruces, NM

Allen, Shepherd, Lewis & Syra, P.A.
David A. Gonzales
Albuquerque, NM

for Amicus Curiae New Mexico Defense Lawyers Association

Michael B. Browde
Albuquerque, NM

David J. Stout
Albuquerque, NM

for Amicus Curiae New Mexico Trial Lawyers Association

**OPINION**

**FRY, Judge.**

{1} Korina Flores (Petitioner) appeals the district court's order denying her petition to intervene and to be appointed co-personal representative in a wrongful death action brought by Plaintiff, Shannon Spoon, wife of Decedent, Daniel Spoon, who was the father of Petitioner's child (Child). Petitioner sought to intervene to assert Child's loss of consortium claim and further sought appointment as co-personal representative in the wrongful death action in order to protect Child's interests as a statutory beneficiary. Petitioner argued that Child's interests were not adequately represented by Spoon's counsel because a conflict of interest existed due to Spoon's role as personal representative and her pursuit of individual claims against Defendant.

{2} We agree with Petitioner that the district court erred in not permitting Petitioner to intervene to assert Child's loss of consortium claim. However, we disagree that there is currently a conflict of interest as we understand that phrase. As we explain below, a conflict of interest is something that affects an attorney's relationship with his or her client, and no such conflict has yet developed in the relationship between Spoon and her attorney. Instead, what exists in this case may be called an "adversity of interest" between Spoon and Child. We conclude that this adversity of interest cannot be resolved by appointing Petitioner as a co-personal representative, as Petitioner argues. Accordingly, although we reverse and remand to allow Petitioner to intervene to assert Child's loss of consortium claim, we affirm the district court's decision denying Petitioner's appointment as co-personal representative.

2

**BACKGROUND**

**{3}** Decedent Daniel Spoon died as a result of a motorcycle accident allegedly caused by an employee of Defendant Burn Construction Company, Inc. Decedent was married to Shannon Spoon at the time of his death. In the year preceding his death, Decedent had also fathered Child with Petitioner.

**{4}** Spoon filed suit shortly after the accident against the driver of the vehicle and Burn Construction. Spoon was appointed the personal representative for purposes of the wrongful death action and also pursued claims, in her individual capacity, for bystander recovery and loss of consortium. At the time the complaint was filed, Spoon did not name Child as an heir of Decedent in the complaint because Decedent's paternity had not yet been established.

**{5}** Once paternity was established, Petitioner moved to intervene in the lawsuit to assert Child's claim for loss of consortium and to represent Child's interest in the wrongful death action. In order to protect Child's interest, Petitioner sought appointment as a co-personal representative with Spoon. Following a hearing, the district court found that there was no evidence that Child's interests in the wrongful death action were not adequately represented. The district court further found that Spoon's counsel did not have a conflict of interest in representing Spoon both in her capacity as personal representative in the wrongful death action and in her individual capacity in regard to her loss of consortium and bystander recovery claims. The district court accordingly denied Petitioner's motion to intervene. Petitioner appeals.

**DISCUSSION**

**{6}** Petitioner's arguments on appeal can be succinctly grouped into two main contentions. First, she claims that the district court erred in not allowing her to intervene to assert Child's loss of consortium claim. Second, she contends that the district court erred in not allowing her to serve as co-personal representative due to her belief that Spoon's counsel could not adequately represent Child's interest in the wrongful death action. We address these issues in turn.

**I.      The District Court Erred in Not Permitting Petitioner to Intervene to Assert Child's Loss of Consortium Claim**

**{7}** Spoon appeared to concede in briefing that Petitioner should have been permitted to intervene in the suit to assert Child's loss of consortium claim. We appreciated counsel's forthrightness in this matter because we agree that there was no basis to preclude Petitioner's intervention to pursue Child's individual loss of consortium claim. *See* Rule 1-024 NMRA. At oral argument, however, Spoon's counsel stated that it was Spoon's position that Child should not be permitted to intervene, but counsel provided no substantive argument as to why it would be impermissible. Because counsel has offered no reason to preclude Child's intervention and because we see none ourselves, Petitioner shall be permitted to intervene

3

for this purpose on remand.

**II. The District Court Properly Denied Petitioner's Motion Seeking Appointment as Co-Personal Representative**

**Standard of Review**

**{8}** Before stating the standard of review, we provide context and distinguish between the terms "conflict of interest" and "adversity of interest" because Petitioner often conflates these two differing concepts. First, insofar as the issues in the case are concerned, a conflict of interest is one that arises within the attorney/client relationship. *See* Rule 16-107(A) NMRA (defining a conflict of interest as impacting an attorney's representation of one or more clients). In a wrongful death action, the attorney/client relationship exists between the personal representative and his or her attorney. *Spencer v. Barber*, 2013-NMSC-010, ¶ 9, 299 P.3d 388. We therefore consider the relationship between the personal representative and his or her attorney when considering the attorney's responsibilities of loyalty, confidentiality, and *conflicts. Id.*

**{9}** Although a statutory beneficiary is not in an attorney/client relationship with the attorney of the personal representative, the statutory beneficiary is an intended beneficiary of the attorney/client relationship that exists between the personal representative and his or her attorney. *See id.* ¶ 10. Because a statutory beneficiary is an intended beneficiary of this attorney/client relationship, both the attorney and the personal representative owe a duty to act with reasonable care regarding the interests of the statutory beneficiary. *Id.* ¶¶ 8, 13. Thus, where there is a significant risk that an attorney's representation of the personal representative will be materially limited by the attorney's responsibilities to the statutory beneficiary, a conflict of interest may exist between the personal representative and his or her attorney. *See* Rule 16-107 (stating that a concurrent conflict of interest exists where there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to a third person).

**{10}** In this case, however, Petitioner does not assert that the attorney's representation of Spoon in her individual or representative capacities will be materially limited by the attorney's duties to Child as a statutory beneficiary. Instead, Petitioner asserts that Child's interests will not be protected by Spoon's or her counsel's representation. Thus, Petitioner is not asserting that a conflict of interest exists between Spoon and her counsel but rather what would more appropriately be termed an "adversity of interest" between Child and Spoon that Petitioner argues should preclude Spoon from serving as personal representative.

**{11}** Having established that Petitioner is asserting the existence of an adversity of interest rather than a conflict of interest, in order to determine the standard of review, we first clarify our understanding of Petitioner's argument as to the remedy she seeks. Petitioner is often unclear in briefing as to whether Spoon should be disqualified from acting as personal representative in general or whether Petitioner simply seeks appointment as co-personal

4

representative. After extensive review of Petitioner's brief, we understand Petitioner to request that her counsel be permitted to represent Child's interests as a statutory beneficiary and in his individual claims while Spoon's counsel represents Spoon's interests as a statutory beneficiary and in her individual claims.

**{12}** Petitioner frames her argument under the rule pertaining to mandatory intervention. *See* Rule 1-024(A)(2). Under this framework, Petitioner argues that if we conclude that Spoon cannot adequately represent Child's interest in the wrongful death action due to an adversity of interest, we should order that Petitioner be appointed co-personal representative to protect Child's interest. *Id.* ("[A]nyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."). This Court has previously disapproved of—but not foreclosed—the use of mandatory intervention by a wrongful death statutory beneficiary. *See Dominguez v. Rogers*, 1983-NMCA-135, ¶ 16, 100 N.M. 605, 673 P.2d 1338 ("We do not believe the legislature intended Rule [1-0]24[(A)] to operate as a device by which a party could thwart the representative form of action authorized in wrongful death suits. Otherwise, there would be no reason why every statutory beneficiary could not intervene as a matter of right."). Regardless, because we have already concluded that Petitioner may intervene to assert Child's loss of consortium claim, we review Petitioner's arguments according to the merits of the alleged adversities of interest that Petitioner asserts, not under the test for mandatory intervention.[1]

**{13}** Even though we are addressing whether an adversity of interest exists sufficient to preclude Spoon's serving as the personal representative, we apply the de novo standard of review applicable to the determination of whether a conflict of interest exists. *See State ex rel. Children, Youth & Families Dep't v. Tammy S.*, 1999-NMCA-009, ¶ 19, 126 N.M. 664, 974 P.2d 158 (stating we review whether a conflict of interest exists de novo). Although we distinguished above between an adversity of interest and a conflict of interest, we believe the determination of whether either exists is sufficiently similar to warrant application of the same standard of review. Accordingly, we review Petitioner's argument de novo.

## A. Adversity of Interest

**{14}** Petitioner argues that an adversity of interest exists because Spoon's conduct in the related probate proceedings evinces a hostility toward Child's rights as an heir and because Spoon's individual claims against Defendant make Spoon's and Child's interests in the distribution of any recovery adverse to one another. Petitioner contends that these

---

[1]Petitioner also argues that Spoon's attorney's representation on behalf of the statutory beneficiaries has been "inadequate." The district court rejected this argument, and we see no reason to second-guess that assessment.

adversities of interest can be resolved by disqualifying Spoon from representing Child's interest in the wrongful death action and appointing Petitioner co-personal representative.

**{15}** Petitioner first contends that the facts surrounding Spoon's appointment as personal representative for the estate—not the wrongful death action—establishes an adversity of interest. Petitioner claims that before paternity was established, Spoon sought appointment as the executor of Decedent's estate without notifying Child and represented to the probate court that she was aware of no other heirs besides herself and Decedent's mother. Petitioner contends that this conduct by Spoon indicates that Spoon's interests are directly adverse to Child's and, therefore, she cannot fulfill her duties as the personal representative in the wrongful death action.

**{16}** We are unpersuaded that this conduct indicates an adversity of interest sufficient to preclude Spoon from representing Child as the personal representative. Under the Act, Spoon is required to distribute any recovery under the claim in strict accordance with the statutory distribution provisions. NMSA 1978, § 41-2-3 (2001); *Spencer*, 2013-NMSC-010, ¶ 22 ("[T]he personal representative has a nondiscretionary duty to distribute the wrongful death proceeds in the ratio prescribed by the [Act]."). Under these provisions, Spoon and Child will each receive fifty percent of any recovery based on the wrongful death action. Section 41-2-3(B).

**{17}** During the time Spoon sought appointment as personal representative of the estate, test results confirming that Decedent was Child's father were still being processed. Once paternity was established, Spoon consistently maintained, both below and on appeal, that Child became entitled to his statutory share of any wrongful death recovery and that she intends to fulfill her duty toward him. Spoon's acknowledgment of this duty stands in sharp contrast to the facts in *Spencer*, where the personal representative's challenge to another statutory beneficiary's entitlement to his share of the wrongful death proceeds created a conflict of interest.[2] 2013-NMSC-010, ¶ 25. Accordingly, we do not agree with Petitioner that Spoon's conduct in the probate proceedings creates an adversity of interest that requires her disqualification or the appointment of a co-personal representative.

**{18}** Second, as to Petitioner's argument that Spoon's pursuit of her individual claims conflicts with her role as personal representative, we briefly summarize the nature of the adversity of interest that Petitioner alleges. Petitioner argues that Spoon, invested with settlement authority in her capacity as personal representative, has an incentive to allocate settlement proceeds toward her individual claims and away from the wrongful death action.

---

[2]The personal representative's actions in *Spencer* created a *conflict* of interest, in part, because once the attorney learned that the personal representative was disputing a statutory beneficiary's entitlement to recovery, the attorney could no longer simply distribute the proceeds of the wrongful death action because doing so would violate his duties to his client. *Id.* ¶¶ 24-25.

Petitioner claims that this creates an adversity of interest necessitating the appointment of Petitioner as co-personal representative to protect Child's interest because otherwise Spoon will have every incentive to maximize her recovery to the detriment of Child.

**{19}** We recognize that there is an adversity of interest but conclude that in this context it does not require that Spoon be removed. We cannot speculate whether Spoon will ultimately comply with her statutorily mandated responsibilities to Child in the event of a recovery. As we discuss below, however, her failure to do so would expose both her and her attorney to significant liability. Here, we merely conclude that the fact that a personal representative is also pursuing individual claims in the suit is not a sufficient basis by itself to presume that the interests of the personal representative and the statutory beneficiaries are so adverse as to preclude the individual from representing the statutory beneficiaries' interests in the action. *Cf. Gresham v. Strickland*, 784 So.2d 578, 581-82 (Fla. Dist. Ct. App. 2001) (stating that "[h]ostility or tension between a trustee and potential beneficiaries" or "disagreements over litigation" are not grounds for removal of a personal representative).

**{20}** We recognize that this adversity of interest between Child and Spoon could conceivably evolve into a conflict of interest between Spoon and her attorney with respect to Spoon's individual claims, on the one hand, and her claim as a statutory beneficiary of the wrongful death estate, on the other hand. For example, if the tortfeasor's insurer were to offer policy limits that could not reasonably compensate all claims, then Spoon's attorney may find that his representation of Spoon's individual claims materially limits his responsibilities to her wrongful death action, or vice versa. But such a conflict has not yet developed in this case and may never develop.

**{21}** As amici curiae have pointed out, where one of the beneficiaries is a minor, it is often the practice to seek court approval of any settlement and appointment of a guardian ad litem to advise the district court on the appropriateness of the allocation of settlement amounts. *See Collins ex rel. Collins v. Tabet*, 1991-NMSC-013, ¶¶ 30-31, 111 N.M. 391, 806 P.2d 40 ("[W]e have no reason to doubt [] that it is the general practice in New Mexico for a guardian ad litem to be appointed to represent the interests of a minor in any proceeding to secure court approval of a settlement involving the minor. . . . The guardian ad litem thus may fulfill the dual role of providing information to the court to enable it to pass on the reasonableness of a settlement, while at the same time protecting the ward's interests by zealous advocacy and thorough, competent representation."). We encourage the parties to consider this process in the event that a settlement is reached.

**B.** **Appointing Co-Personal Representatives Would Not Remedy Any Potential Adversity of Interest**

**{22}** Although we conclude that the adversity of interest we have recognized does not require removal of Spoon as the personal representative, we acknowledge that Petitioner's concerns are not entirely unfounded. *See Home Ins. Co. v. Wynn*, 493 S.E.2d 622, 626 (Ga. Ct. App. 1997) (holding that a personal representative breached her fiduciary duty to

wrongful death beneficiaries by allocating settlement proceeds in such a way as to prioritize her individual claims over the wrongful death action). We are mindful that disagreements may arise between the beneficiaries themselves and between the beneficiaries and the personal representative in wrongful death actions regarding the prosecution of the claim. *See generally Holmes v. McClendon*, 76 S.W.3d 836, 839 (Ark. 2002); *Spencer*, 2013-NMSC-010, ¶ 2. We therefore also consider Petitioner's argument that her concerns would be remedied by the appointment of a co-personal representative.

**{23}** Petitioner relies on *Dominguez* and *Lajeuenesse* to argue that the appointment of a co-personal representative is an accepted practice in New Mexico. *In re Estate of Lajeuenesse, ex rel. Boswell v. Bd. of Regents of UNM*, 2013-NMCA-004, 292 P.3d 485, ¶ 17 (noting that "[e]ven if there were co-personal representatives, they serve the singular purpose of bringing the wrongful death action"); *Dominguez*, 1983-NMCA-135, ¶ 11 (observing that the then applicable version of Section 41-2-3 refers to the appointment of "personal representative or representatives" (internal quotation marks omitted)). Petitioner's argument utilizes some selective use of quotations. For instance, the only portion of *Dominguez* that could support Petitioner's argument is a quotation from an earlier version of the wrongful death statute stating that a wrongful death action "shall be brought by and in the name [or names] of the personal representative [or representatives]." *Dominguez*, 1983-NMCA-135, ¶ 11 (citing Section 41-2-3 (Repl. Pamp. 1982)). We reject Petitioner's reliance on an earlier version of the statute cited in *Dominguez*, especially where the statute, in its current form, could be read to foreclose Petitioner's argument because an amendment explicitly removed the reference to multiple personal representatives. Section 41-2-3 (stating that a wrongful death action "shall be brought by and in the name of the *personal representative* of the deceased person" (emphasis added)). Furthermore, even when the statute did provide for multiple representatives, the *Dominguez* Court stated that "[t]he reference in the wrongful death statute to the possibility of multiple representatives does not automatically give potential intervenors the right to join [as co-personal representatives]," which is precisely what Petitioner is seeking in this case. 1983-NMCA-135, ¶ 11.

**{24}** We are similarly unpersuaded that *Lajeuenesse* supports Petitioner's argument. In stating that it is possible to designate more than one personal representative, this Court cited to *Wachocki v. Bernalillo County Sheriff's Department*, 2010-NMCA-021, ¶ 2, 147 N.M. 720, 228 P.3d 504. In *Wachocki*, the "co-personal representatives" were parents of the decedent and, more importantly, represented by the same attorney. *Id.* While this practice could easily be called into question by both the statutory language and our case law, the multiple representation in *Wachocki* was never challenged. *See In re Estate of Lajeuenesse*, 2013-NMCA-004, ¶¶ 16-17 (emphasizing that the personal representative is the "single person" who brings the wrongful death action and noting the Legislature's use of the "singular" in designating who may bring the action). Regardless, we note the significant difference between the prosecution of the claim by two parents of a deceased child represented by one attorney and the dual appointment Petitioner seeks in this case.

**{25}** Petitioner seeks appointment as co-personal representative due to the adversity of

interest between Child, as a statutory beneficiary, and Spoon, as personal representative. We fail to see how allowing Petitioner—who also has an individual claim against Defendant—to serve as co-personal representative would remedy this adversity. If Petitioner is appointed co-personal representative, Petitioner will owe the same duties of care to Spoon as a statutory beneficiary that Spoon, in her capacity as personal representative, owes to Child. *See Spencer*, 2013-NMSC-010, ¶ 8 ("The personal representative has a duty to act with reasonable care regarding the interests of the statutory beneficiaries[.]"). Petitioner fails to explain how placing herself into the very adversity that she argues should disqualify Spoon would remedy the adversity she argues already exists.

**{26}** As we noted above, Petitioner foresees a situation in which Spoon's attorney represents her interests in the wrongful death action and in her individual claims, while Petitioner's attorney would represent Child's similar respective interests. Along these lines, Petitioner argues that Child has the right to choose his own counsel to represent his interests in the wrongful death action and that a court should not override this right, absent compelling circumstances. *See Chappell v. Cosgrove*, 1996-NMSC-020, ¶ 7, 121 N.M. 636, 916 P.2d 838 (noting similar argument and quoting *Ramsay v. Boeing Welfare Benefit Plans Comm.*, "The court is also mindful that a person's right to select his own counsel, although not an absolute right, may be overridden only where compelling reasons exist." 662 F. Supp. 968, 970 (D. Kan. 1987)). Petitioner contends that allowing Spoon's counsel to prosecute the wrongful death action on Child's behalf violates this right.

**{27}** Although we agree with Petitioner that generally a litigant has the right to choose his or her own counsel, we conclude that the structure and purpose of the Wrongful Death Act militates against recognizing a right by statutory beneficiaries to prosecute the claim on their own behalf. As this Court recently stated, the personal representative "remains distinct from the beneficiaries as the party who must bring the wrongful death action and as the only party to the action pursuing the claims for damages that result from the injuries." *In re Estate of Lajeuenesse*, 2013-NMCA-004, ¶ 12; *see Dominguez*, 1983-NMCA-135, ¶ 10 ("The personal representative is the only one who may bring the action."). As the sole party pursuing the claims, the personal representative also has the right to choose counsel. *See Leyba*, 1995-NMSC-066, ¶ 22 (noting that the personal representative is vested with control over litigation decisions); *see also Brewer v. Lacefield*, 784 S.W.2d 156, 158 (Ark. 1990) (stating that it is the duty of the personal representative to choose counsel to pursue the wrongful death action).

**{28}** This comports with the Legislature's determination that the personal representative stands in place of the statutory beneficiaries in bringing a wrongful death action. *See Chavez v. Regents of UNM*, 1985-NMSC-114, ¶ 8, 103 N.M. 606, 711 P.2d 883 ("The personal representative is only a nominal party who was selected by the Legislature to act as the statutory trustee for the individual statutory beneficiaries."). The Act's purpose in utilizing a personal representative to "centralize the claims and prevent multiple and possibly contradictory lawsuits" presents a compelling reason to deny statutory beneficiaries the right to intrude on the role of an otherwise properly appointed personal representative. *Id.* ¶ 10;

9

*cf. Spencer*, 2013-NMSC-010, ¶ 8 ("Statutory beneficiaries are generally not permitted to join as parties in a wrongful death lawsuit because the personal representative is the beneficiary's trustee[.]"); *Mackey v. Burke*, 1984-NMCA-028, ¶ 12, 102 N.M. 294, 694 P.2d 1359 ("If each potential beneficiary was considered a personal representative, the suits could be unending and contradictory."), *overruled on other grounds by Chavez*, 1985-NMSC-114.[3]

**{29}**  Furthermore, we believe any potential adversity of interest that arises can be remedied by applying well-established principles of New Mexico law, not by the appointment of co-personal representatives. As we stated above, both Spoon and her counsel owe a duty to Child to act with reasonable care regarding his interests. *Spencer*, 2013-NMSC-010, ¶¶ 8-13. This includes their duties to ensure that Child receives a proper allocation of any recovery from the wrongful death action. *Id.* ¶ 22 (explaining that "the personal representative has a nondiscretionary duty to distribute the wrongful death proceeds in the ratio prescribed by the Wrongful Death Act"); *Lebya*, 1995-NMSC-066, ¶ 28 (holding that an attorney has a duty to "exercise reasonable care to ensure that the statutory beneficiaries actually receive the proceeds of any wrongful death action"). Failure to comply with these duties could potentially expose both Spoon and her counsel to significant legal liabilities. *Spencer*, 2013-NMSC-010, ¶ 10 (stating that where an attorney breaches his duty to the personal representative to render services with reasonable skill and care, the statutory beneficiary has a claim against the attorney); *Dominguez*, 1983-NMCA-135, ¶ 19 (recognizing that statutory beneficiaries can assert a cause of action against a personal representative who fails to properly fulfill his or her statutory responsibilities). Proceeding in the face of a conflict of interest in the attorney's relationship with his client, the personal representative, without taking action to resolve the conflict can also constitute a breach of the attorney's duty.[4] *Spencer*, 2013-NMSC-010, ¶ 27. Finally, as our Supreme Court has recognized, a statutory beneficiary is not precluded from pursuing traditional tort claims such as misrepresentation, fraud, or collusion. *Id.* ¶ 5. We believe that the risk of potential

---

[3]Petitioner argues in the alternative that if she is not appointed co-personal representative, Spoon's counsel should be precluded from taking any fees or costs from Child's portion of the wrongful death recovery. The issue of which attorney is entitled to fees out of Child's wrongful death recovery has been quite conspicuous throughout Petitioner's arguments on appeal. At least one jurisdiction that has addressed this issue has held that an attorney hired by a beneficiary to protect his or her interests is hired at the beneficiary's expense. *Brewer*, 784 S.W.2d at 158-59. However, we think this issue, if it arises in the future course of litigation, should be addressed by the district court in the first instance.

[4]Proceeding in the face of a conflict without resolving the conflict can also result in serious disciplinary sanctions. *See In re Montoya*, 2011-NMSC-042, 150 N.M. 731, 266 P.3d 11 (indefinitely suspending attorney for, in part, proceeding with representation in wrongful death action despite clear conflicts of interest between his clients and improperly allocating settlement amounts).

liability provides a strong incentive to a personal representative and his or her counsel to ensure that the statutory beneficiaries' interests are properly protected.

**{30}** In sum, although we recognize that in some circumstances a personal representative's interests can become adverse to those of the statutory beneficiaries such that action must be taken to resolve the adversity, we decline to hold as a matter of law that a statutory beneficiary with individual claims against the defendant is precluded from serving as the personal representative in a wrongful death action. While we conclude that Spoon can remain as the wrongful death personal representative, it is imperative that Spoon's counsel remain vigilant to ensure that his representation of Spoon in both her individual and representative capacities does not run afoul of his duty to Child and that Spoon remain mindful of her statutory duties. *Spencer*, 2013-NMSC-010, ¶ 13; *see also Holmes*, 76 S.W.3d 836; *Leyba*, 1995-NMSC-066.

## CONCLUSION

**{31}** For the foregoing reasons, we remand to the district court for proceedings consistent with this opinion.

**{32}**   **IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Judge**

**I CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

**MICHAEL D. BUSTAMANTE, Judge (specially concurring).**

**Bustamante, Judge (specially concurring).**

**{33}** I concur in the Opinion and the conclusion that there is not currently an adversity of interest that necessitates the removal of Shannon as personal representative or the appointment of Petitioner as co-personal representative. I write separately to emphasize one particular animosity in this case that threatens to injure the interests of both statutory beneficiaries long before any adversity claimed by Petitioner will: the animosity between the attorneys.

**{34}** The record below, the briefing in this Court, and counsels' oral argument all reveal an unacceptable level of personal rancor. It has been disheartening to witness the attorneys unnecessarily exacerbate the animosity that is prone to otherwise exist between Shannon and Petitioner under these circumstances. I cannot know the cause of this undue

animosity—perhaps there is a history of conflict between counsel; perhaps the potential for division of fees has overtaken common courtesy. Whatever the source, I fear that practically speaking, the relationship between the attorneys has deteriorated to such an extent that the attorneys risk subjugating the interests of their respective clients to their own personal vendettas. Perhaps most concerning, I am not sure that counsel appreciate where their clients' interests end and their own personal animosity begin.

{35}    My concerns lead me to disagree with the Opinion's suggestion that use of a guardian ad litem should be "considered" by the parties and the district court. In my view, the possibility that the attorneys can work together toward the best interest of their clients is so bleak that I would require the immediate appointment of a guardian ad litem to ensure that Child's interests are protected. I do not condemn zealous advocacy. But zeal as an end unto itself can quickly come unmoored from the client's best interest and risk, as this case demonstrates, pushing the parties further away from a swift and reasonable resolution of their case.

_____
**MICHAEL D. BUSTAMANTE, Judge**